**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON**

**CRIMINAL ACTION NO. 23-14-DCR**

**UNITED STATES OF AMERICA**                                            **PLAINTIFF**

**V.**                 **DEFENDANT'S SENTENCING MEMORANDUM**

**RYAN STIVERS**                                                             **DEFENDANT**

**\*\*\*\*\***

Comes now, Ryan Stivers, by and through counsel, and requests the Court to impose the statutory minimum sentence of sixty (60) months of imprisonment.

It is well settled that a sentencing court must first determine the properly calculated guideline range applicable to the defendant. Then the sentencing court must consider the factors set forth in 18 U.S.C. § 3553(a), and weigh them to reach a sentence no more than necessary to satisfy to comply with the purposes set out in subsection (a)(2). 18 U.S.C. § 3553(a). The court fashions an appropriate sentence by considering the guidelines and the 3553(a) factors.

In this matter, the Defendant contests the guideline range for imprisonment recommended in the Presentence Report (PSR). The PSR determined the guideline range for imprisonment as 108–135 months. The Defense submits that the calculated guideline range for imprisonment is statutory minimum sentence of sixty (60) to an upper range of seventy-one (71) months. *See* U.S.S.G. § 5G1.1(c)(2).

**I.   Statement of Facts.**

The facts of the conspiracy before Ryan's involvement are important to describe accurately his conduct. In 2015, before Ryan's involvement, J.K. and J.W. were roommates

living in Cincinnati, Ohio. Around this time, T.J., who was attending college in California, began selling marijuana to J.K. At first, T.J. sold or fronted ounce amounts of marijuana to J.K. By the Spring of 2016, T.J. was distributing multiple pounds to J.K., who was selling the marijuana locally.

      T.J. typically sent the marijuana in packages through the United States Postal Service to J.K. In this way, J.K. received approximately three to four pounds of marijuana bi-weekly. J.K.'s distribution network expanded. And, J.W. became one of his marijuana distributors. At some point, the United States began intercepting the packages. Though the government's investigation was unknown to T.J., he stopped mailing the packages. Instead, he introduced J.K. and J.W. to a source of supply in California. In late 2016 or early 2017, J.K. moved to Virginia and began receiving packages in Virginia.

      During this period, Ryan Stivers, who was 24 at the time, was friends with J.W. At first, Ryan purchased personal use amounts of marijuana from J.W. He spent time at J.W.'s apartment and saw marijuana transactions between J.W. and J.K. and several buyers. He also saw the money they were making. Ryan started buying larger amounts of marijuana from J.W. in order to make money himself. After J.K. moved to Virginia, J.W. stepped into his role, and J.W. began receiving packages mailed to him. J.W. sent the packages to any address he deemed relatively safe for the purposes for retrieving them. He sometimes paid people to use their addresses and to collect the packages from others' homes. Ryan realized J.W. received the marijuana in the mail from California when he began selling marijuana for J.W. Importantly, J.W. sent two packages addressed to Ryan's home that law enforcement intercepted. These packages were never delivered.

As the United States intercepted packages, J.W. changed how he shipped the marijuana. Instead of mailing the packages, J.W. began to fly money to California, purchase the marijuana there, and have it driven back to Kentucky. Ryan was involved in this method of shipment. He accompanied J.W. to California multiple times. In addition, Ryan muled some of J.W.'s cash through the airport to make it appear less suspicious, and he rented the vehicles or provided a vehicles for an associate to drive the marijuana back.

In winter of 2017, J.K. and T.G. visited Cincinnati and stayed at an Airbnb. Ryan and J.W. met them at the Airbnb. Before this, T.G. purchased his first firearm. During the party, T.G. fired several shots in the backyard of the Airbnb. T.G.'s possession of the firearm was not connected to the selling of marijuana or any illegal actions.

In December 2017, R.B. rented an Airbnb in Covington, Kentucky for J.W. and his friends to use after attending a football game. Police received a complaint about significant foot traffic at the Airbnb. Subsequently the Police searched the Airbnb and found seven pounds of marijuana in a dryer and a firearm hidden behind the dryer. They searched J.W.'s car and found approximately $48,000 in two safes in the trunk of the car. The Police arrested J.W. Shortly thereafter, Ryan attempted to collect money owed to him for marijuana sales to pay J.W.'s bond. Ryan owed the money to J.W. for marijuana fronted to him. J.W. was released on bond shortly after his arrest.

On March 2, 2018, law enforcement conducted a traffic stop on J.W. for expired tags. They seized $22,000 in cash and a small amount of marijuana. He was issued a citation for the tags and possession of marijuana.

On April 24, 2018, law enforcement intercepted J.W. and Ryan in the Cincinnati Airport. J.W. was in possession of $12,900, and Ryan had $24,500. They admitted to law enforcement

that they were going to obtain marijuana from California with the money. Law enforcement seized the money and released J.W. and Ryan.

On May 14, 2018, J.W. was sentenced to ten years conditionally discharge for five years and to serve ninety (90) days in jail. When J.W. was sentenced, Ryan coordinated two deliveries of marijuana via car from California to Northern Kentucky.

On September 10, 2018, law enforcement conducted a traffic stop on Ryan. They found a small amount of marijuana in his possession and issued him a citation. On September 18, 2018, law enforcement executed a search warrant at Ryan's residence. They seized approximately $28,000, a small amount of marijuana, and drug paraphernalia.

The Covington Grand Jury indicted Ryan in April 2023.

## II.     PSR Objections.

  a. Drug Weight Calculation.

   i. The Defendant and the United States agree that the base offense level should be 24 pursuant to U.S.S.G. §2D1.1(c)(7). The parties agree that the amount of marijuana in paragraph 14 and the marijuana equivalent of the $47,680 should not be included in the relevant conduct. The Defendant admits that the offense included more than 100 kilograms but less than 400 kilograms. Therefore, the Defendant withdraws his additional objections to the factual allegations.

  b. Firearm Enhancement.

   i. The Defendant objects to the enhancement for the possession of a firearm. Possession of a firearm by a coconspirator must be connected to the conspiracy and be reasonably foreseeable to the Defendant. *United States v. Woods*, 604 F.3d 286 (6th Cir. 2010). There is an inference that the gun was

        foreseeable to the Defendant when there are massive amounts of drugs in a single location. *Id*. The Sixth Circuit has required that there be narcotics at least worth $60,000 physically located near the firearm. *Id*. When proximity is lacking, the Sixth Circuit requires additional evidence that the defendant expected a firearm to be present. *Id*.

ii. In this matter, Police located seven pounds of marijuana near the firearm. The Police found the marijuana and located the firearm in and around a dryer in an Airbnb. While the Police did locate $48,000, the money was found in two safes in a vehicle in the driveway of the Airbnb. The money was not in proximity to the gun or the marijuana.

iii. The government contends that J.W. admitted that the seven pounds of marijuana found during this incident was part of a shipment of fifty pounds. That may be so, but J.W. did not state that the entire fifty pounds of marijuana was located at the Airbnb at one time. The Sixth Circuit requires that there be a large amount of drugs in the same location near the firearm for the inference to apply. There is no indication that was the case here. Additionally, Ryan was not present at that location nor did he rent the Airbnb. Therefore, additional evidence is required.

iv. The government points to two pieces of evidence in their objections to the PSR. First, it points to a statement made by the Defendant that J.K. and T.G. were shooting a firearm for recreational reasons behind an Airbnb at which J.K. and T.G. were staying. This was the only time anyone connected with the conspiracy was seen with a gun, and it was not related to selling marijuana.

        J.K. and T.G. possessed that firearm for recreational purposes only. There is no proof that anyone at the Airbnb possessed or sold marijuana at that time nor that they met any customers. Additionally, by the time J.W. was caught with the firearm, both J.K. and T.G. had moved to other states and were no longer involved in the conspiracy for which Ryan pleaded guilty.

    v.    The second piece of evidence is a text message from Ryan to J.W. stating that if they were going to meet a new local dealer they knew nothing about, he would need a "strap," slang for a gun. The meeting never occurred, and there is no proof that Ryan ever possessed a gun. Ryan's comments was more likely the bravado of an immature young man.

    vi.    In addition, the government has no evidence that any of the members of this conspiracy regularly carried firearms, attempted to obtain firearms, sold firearms, or even possessed firearms. Law enforcement searched Ryan's home and found no firearm. Importantly, J.W. was pulled over multiple times, and there is no evidence that he possessed a firearm in those instances. .

c. Maintaining a Drug Premises.

    i.    Note 17 to U.S.S.G. § 2D.1.1 states that maintaining a drug premises requires that the premise be maintained for the purpose of drug manufacturing or distribution, including storage. The court should consider whether the defendant held a possessory interest in the premise and the extent to which the defendant controlled access to, or activities at, the premise. Manufacturing or distributing drugs must be one of the defendant's primary or principal uses for

      the premises, rather than one of the defendant's incidental or collateral uses for the premises.

  ii.    The PSR claims that Ryan's home was maintained as a drug premises because two boxes of marijuana were addressed and shipped there. However, Ryan did not maintain his home as a drug premises. There is no evidence that he manufactured, distributed, or stored marijuana at his home. The two instances when J.W. shipped marijuana by mail to Ryan's address is not sufficient to show that Ryan's primary use for the premises was drug distribution. J.W. did not have a possessory interest or control or the access or to Ryan's home. Following the logic of the PSR, J.W. converted every residence to which he shipped marijuana by mail into a drug premises. The enhancement does not apply.

  iii.    Concerning the Airbnb, the rental for the purposes of selling marijuana was not reasonably foreseeable to Ryan. J.W. and Ryan typically delivered marijuana to their client's, either in a public place or at their client's home. They did not regularly rent Airbnb's for selling marijuana. J.W. rented a few Airbnb's over time to live in because he was in a tumultuous relationship with his girlfriend, and they separated multiple times over the course of their relationship.

  iv.    Text messages between Ryan and J.W. demonstrate that the Airbnb was rented by J.W. for guests who were visiting from out of town to attend a Bengal's football game. Therefore, this enhancement should not apply to

>>Ryan because it was not reasonably foreseeable to him that the premise would be used to sell marijuana.

**III.     18 U.S.C. § 3553(a) Factors**

The Court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

The conspiracy in which Ryan was involved trafficked in marijuana exclusively. Marijuana is a Schedule I controlled substance, and its trafficking is serious and negatively affects individuals and society. Despite this, public opinion about marijuana consumption has significantly changed over the years. The Pew Research Center issued a short-read article entitled, "Americans overwhelmingly say marijuana should be legal for medical or recreational use." https://www.pewresearch.org/short-reads/2022/11/22/americans-overwhelmingly-say-marijuana-should-be legal-for-medical-or-recreational-use. The article is attached hereto as "Exhibit A." It states, in part:

> Over the long term, there has been a steep rise in public support for marijuana legalization, as measured by a separate Gallup survey question that asks whether the use of marijuana should be made legal –without specifying whether it would be legalized for recreational or medical use. This year, 68% of adults say marijuana should be legal, matching the record-high support for legalization Gallop found in 2021.

Exhibit A at *2.

Not surprisingly, 72% of persons in the age group of 18 to 29 years of age approve of the legalization of marijuana use for recreational purposes. *Id*. at 2. The public's change in attitude about marijuana use is also reflected in the change in States' laws. Even Kentucky legalized marijuana use for medical purposes in March 2023. Additionally, marijuana is not a lethal drug; though, it is not without serious negative mental and physical health effects. "Exhibit B" is the DEA Drug Fact Sheet for Marijuana. It states that "[n]o deaths from marijuana have been

8

reported." Exhibit B. None of this is to excuse Ryan's conduct or place, but the changing attitudes about marijuana are part of the circumstances, broadly speaking, in which Ryan distributed marijuana illegally in significant amounts.

Ryan is a lifelong resident of Northern Kentucky. He attended Holmes High School in Covington. His family is loving and stable, and he was brought up in a home that respected the law. His father, Kevin, was a Detective in Covington for many years and now serves the Federal Court. Despite this, Ryan was smoking marijuana daily, as were his friends. He knew it was illegal but, like many people, thought it was "no big deal" because it was legal in many states. Ryan was 25 years old when he started selling marijuana. He was enticed by the life-style and the money—more money than he had ever seen. He had a ready market in his friends and acquaintances, and he had no real responsibilities. Ryan did not have a significant other, children, or any significant financial obligations. Ryan hid is activities from his parents.

Ryan's crime ended when law enforcement searched his home in September 2018. During the next four years and approximately four months, Ryan turned himself around. He sought mental health treatment for anxiety and was placed on medication by a medical professional. Ryan obtained a job that turned into a career. Until his detention, Ryan was employed and earning $100,000 per year in the field of logistics. He exceled at his profession and made many close friendships. Ryan developed a meaningful personal life. He has been in a relationship with his fiancée for a number of years now, and she continues to be supportive. Ryan is an active father to their two children. The attached letters in support evidence that colleagues, friends and family support Ryan. The letters are attached as "Exhibit C".

IV.     **Deterrence.**

The Defendant understands the need for general deterrence, and we submit that a sentence of sixty months for trafficking in marijuana is sufficient the purposes of general deterrence. A sentence of five years is also enough for specific deterrence. Ryan has not participated in the sale of marijuana for five years. He turned his life around and lives as a productive citizen with a career and a family.

    a. Respect for the Law.

One very unfortunate aspect of Ryan's conduct was its complete divergence from the values of his parents. They showed Ryan the proper role of people in society and how to contribute in society in a positive way. Yet, Ryan rejected that for flashy money and access to marijuana for his own use. Now, over four years later, Ryan accepts responsibility for his criminal conduct and regrets the embarrassment he caused his family and friends. He accepts that this Court must make an independent judgment of his punishment, and he is determined to make use of his time in prison to continue to grow as an adult and provider for his family.

    b. Disparity.

It is clear from the facts of this case that J.K. played a significant role in this conspiracy. J.K. was J.W.'s supplier and responsible for far greater amounts of marijuana. J.K. pled guilty and admitted to causing 222 parcels of marijuana to be shipped, totaling approximately 743.2 lbs of marijuana. This does not account for the marijuana that he had driven by vehicle from California. He also pled guilty to one count of Money Laundering. The prosecution in that case requested a below-guidelines sentence due to J.K.'s youth and minimal criminal history. The Defense requested a sentence of sixty (60) months for these reasons. That court ultimately sentenced J.K. to sixty (60) months incarceration. To sentence Ryan to anything more than sixty (60) months would create an unwarranted sentencing disparity. Ryan pleaded to the drug

conspiracy. He was not convicted of money laundering. J.K. was responsible for much more drug weight than Ryan. J.K. was higher in the conspiracy than Ryan. Yet, like J.K., Ryan does not have a significant criminal history. By sentencing Ryan to sixty (60) months of incarceration, the Court would not create an unwarranted disparity between these members of the same conspiracy.

Based upon these reasons, the Defendant moves the Court to sentence him to no more than sixty (60) months incarceration.

Respectfully submitted,

\s\ Amanda S. Johnson
Amanda S. Johnson
Robert K. McBride
*Attorneys for Ryan Stivers*
Taft Stettinius & Hollister, LLP
50 E. RiverCenter Blvd., Suite 850
Covington, Kentucky 41011
(859) 547-4307
asjohnson@taftlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2023, the above was filed via ECF and electronically served upon the government.

\s\ Amanda S. Johnson
*Attorney for Ryan Stivers*